It does not appear that there was any repudiation by the plaintiffs of the conditions which the defendant attempted to impose on delivering the check other than the testimony of one of the plaintiffs to the effect that, after receiving the check and letter, he called the defendant's attorney on the telephone, and thanked him for the check, and demanded settlement for the balance of the contract price, less the cost of completion, which he claimed would be only $600. This was controverted by the testimony of the attorney for defendant that he never heard from plaintiffs after sending the check, and therefore the jury might have found that plaintiffs acquiesced in the conditions imposed if they were not deemed to have acquiesced as matter of law by using the check.

We are of opinion that the court erred in excluding the letter, and in ruling that plaintiffs were not bound by the conditions on which the check was sent. There was a question of fact as to whether or not it had been agreed by the plaintiffs as a condition of receiving this payment that the remaining work should be postponed until the following spring; and in determining that question of fact the letter became quite material. The defendant took the position that the plaintiffs were not entitled to any further payment on the contract at that time, and that he only consented to make the payment upon the understanding that the remaining work was to be postponed. The letter shows that it was the defendant's intention in giving the check not to recognize an existing liability to that extent on the contract or to relieve the plaintiffs from completing the contract; but that it was expected that the plaintiffs were to finish the work, and the acceptance and use of the check sent and accepted on those conditions, particularly if there was no attempt to repudiate the conditions, tends to sustain defendant's contention that the completion of the work was to be postponed. On February 1st thereafter plaintiffs brought this action to recover the balance of the contract price and for extra work less the cost of completing the work.

[5] If the check was given as claimed on the part of the defendant as a condition of postponing the remaining work until spring, that was a sufficient consideration, and would defeat a recovery. Dunn v. Whalen, 120 App. Div. 729, 105 N. Y. Supp. 588.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

PAYNE v. BINGHAMTON RY. CO.

(Supreme Court, Appellate Division, Third Department. March 5, 1913.)

1. STREET RAILROADS (§ 117*)—INJURIES—ACTIONS—JURY QUESTION—CONTRIBUTORY NEGLIGENCE.

Evidence in an action against a street railway company for damage to furniture, by a moving van being struck by defendant's street car, *held* to make it a jury question whether the driver of the moving van was guilty of contributory negligence.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. § 117.*]

2. STREET RAILROADS (§ 98*)—INJURIES ON TRACK.

Trolley cars may run faster in the country than in the city, and one using a highway crossing must assume that they may do so and act accordingly.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 204–208; Dec. Dig. § 98.*]

3. STREET RAILROADS (§ 81*)—INJURIES ON TRACK—DUTY OF MOTORMAN—APPROACHING HIGHWAY CROSSING.

The duty of a motorman in approaching a dangerous highway crossing is materially different from the duty of an engineer on a steam railroad.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 172–177; Dec. Dig. § 81.*]

4. STREET RAILROADS (§ 99*)—INJURIES ON TRACK—NEGLIGENCE.

The driver of a wagon with a light on it could assume that a motorman, upon seeing the light on the track at a country highway crossing, would slow up speed.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 209–216; Dec. Dig. § 99.*]

Appeal from Trial Term, Broome County.

Action by James W. Payne against the Binghamton Railway Company. From a judgment for defendant, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, LYON, and HOWARD, JJ.

Hinman, Howard & Kattell, of Binghamton (Thomas B. Kattell, of Binghamton, of counsel), for appellant.

Curtiss, Keenan & Tuthill, of Binghamton (Thomas J. Keenan, of Binghamton, of counsel), for respondent.

SMITH, P. J. The appeal is from a nonsuit granted upon the plaintiff's evidence alone. The action is brought to recover damages for injury to a van containing an organ and two pianos belonging to the plaintiff, and also to the horses which were attached to the van at the time of the injury. Upon a highway crossing the defendant's car collided with the plaintiff's van, thereby causing the injury. At the point in question for 1,400 or 1,500 feet to the east the highway and two tracks of the Erie Railroad and two tracks of the defendant railroad ran practically parallel. After passing westward this distance the highway crosses over the two railroads and no longer runs parallel thereto. At this point the tracks of the Erie road and of the defendant's road could be seen for about 1,400 feet to the east. To the west the evidence is to the effect that the Erie track could be seen about a quarter of a mile. In the month of February about 7 o'clock in the evening, in a van weighing about 3,700 pounds, plaintiff was transporting an organ and two pianos weighing 2,300 pounds from Binghamton westward to the village of Endicott. One William Slater, an experienced man, was the plaintiff's driver. Hanging from the top of the front of the van was a lantern, which was lighted upon the night in question, and which could be seen from the front and also from the sides of the van. As the van was about to cross these four tracks, plaintiff asked the driver if everything was all right. The

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

driver looked both ways and, seeing nothing, assured the plaintiff that it was and started to cross. His horses got beyond the two Erie tracks, into the space between the Erie tracks and the defendant's tracks, and the fore wheels of the van had passed the Erie tracks, when he looked to the east and saw about 400 feet distant one of the defendant's cars coming without a headlight and without signal. He whipped up his horses and endeavored to get over, and nearly succeeded, when the car struck the rear part of the rear wheel and caused the damage for which this action is brought.

The negligence of the defendant is not questioned in the respondent's brief. The car was proceeding after dark without a headlight at a rapid rate. The front door of the car was defective, and kept coming open. In order to fix that the attention of the motorman was diverted, and he was busy fixing this door, just prior to the collision. Had he attended, he would have seen the light upon this van passing this crossing, and would have slowed up his car, so that the collision would have been avoided. The plaintiff on the trial was nonsuited upon the ground that Slater, the driver, was guilty of negligence contributing to the plaintiff's injury, and it is upon this ground that the respondent seeks to sustain this judgment.

[1-4] I am unable to agree with the learned trial judge in the conclusion reached. The question turns upon the evidence of Slater himself, who swears that as he neared the turn to cross the Erie tracks he looked for trains east. From that time on, as he crossed the two railroads, he looked east and west. As he went across the track he looked both ways and saw nothing coming. From the Erie track to the defendant's track is a descent of about $2\frac{1}{2}$ feet. The distance between the tracks is about 36 feet. If the defendant's car had had a headlight, Slater would probably have discovered the approach of the car before he came upon the Erie track. The fact that the car itself was lighted, without a headlight, is not of itself, as matter of law, sufficient to give him notice of the approach of the car. After he had started on the downgrade, having passed the Erie track, and when his horses were within 13 or 15 feet of the defendant's track, he first discovered the approach of the defendant's car 400 feet away. He thought he could get over, and whipped up his horses, and almost succeeded. Upon these facts he is charged with contributory negligence. It appears that there were 2 inches of old snow upon the ground at the time. From the forward end of the pole to the rear end of the wagon was about 26 feet. It can hardly be that the court would require plaintiff under such circumstances to hold his van upon the Erie tracks. While he could see the Erie tracks to the west about a quarter of a mile, if he had waited a fast train going around the curve would have been upon him in a very short time, and before he could have started his horses and gotten his van thus heavily loaded out of danger. It cannot be that he was required to stop his van between the two tracks. That would be practically impossible. The van and the horses were 26 feet and the space was only 36 feet, to allow nothing for the overhanging of the cars. There was a material grade and slippery ground and a heavy load. It is undoubtedly true that trolley cars may run faster in

the country than in the city, and that one who uses a highway crossing must assume this custom to exist. Nevertheless, the duty of the motorman of a street car in approaching a dangerous highway crossing is materially different from the duty of an engineer of a steam car with a heavy train behind him. The driver of this van had the right to assume that the motorman of this street car, warned by the lantern in the front of his van, would, if necessary, pay some heed thereto, and slacken his pace at least. If he had so done it would have averted this accident. It seems to me clear that the court was not authorized to take this question from the jury and decide as matter of law that under these circumstances the plaintiff's servant was guilty of contributory negligence. The respondent's attorney will take issue with the accuracy of my statement of some of the facts attending this accident. Upon reading carefully the whole evidence of Slater, however, I think I have stated nothing which the jury would not be authorized to infer therefrom, although there are some detached sentences to be found in his evidence which, taken alone, might indicate less diligence upon his part.

I recommend that the judgment and order be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.